# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ALEX RICCHIO,<br><br>    Defendant. | No. CR03-2053-LRR<br>No. C05-2051-LRR<br><br>**ORDER** |

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . *2*

III.  SUMMARY OF RELEVANT HEARINGS . . . . . . . . . . . . . . . . . . . *4*

    A.    *Sentencing Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    B.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        1.    *Testimony of Jonathan B. Hammond* . . . . . . . . . . . . . . . *6*
        2.    *Testimony of Defendant* . . . . . . . . . . . . . . . . . . . . . . *8*
        3.    *Testimony of Angela Ricchio* . . . . . . . . . . . . . . . . . . . *9*
        4.    *Testimony of Michaela Graves* . . . . . . . . . . . . . . . . . . *10*
        5.    *Testimony of Cindy Stowe* . . . . . . . . . . . . . . . . . . . . *11*

IV.  LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

    A.    *Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255* . . . . *12*
    B.    *Standards Applicable to Sixth Amendment* . . . . . . . . . . . . . . *13*

V.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

    A.    *Defendant's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
    B.    *Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . *18*

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

## I.  INTRODUCTION

The matter before the court is Defendant Alex Ricchio's motion to vacate, set aside or correct sentence (docket no. 37). Defendant filed such motion pursuant to 28 U.S.C. § 2255.[1] The government filed a response (docket no. 42) on February 6, 2006. For the following reasons, Defendant's 28 U.S.C. § 2255 motion shall be denied. In addition, a certificate of appealability shall be denied.

## II.  RELEVANT PROCEDURAL HISTORY

On October 22, 2003, the government filed an indictment against Defendant. Count 1 of the indictment charged Defendant with conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(viii) and 21 U.S.C. § 846. Count 2 charged Defendant with manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 846.

On January 7, 2004, Defendant, without entering into a plea agreement with the government, pled guilty to Count 1, the drug conspiracy count. On January 22, 2004, the court accepted Defendant's plea of guilty.

In April of 2004, the United States Probation Office prepared a pre-sentence investigation report and a sentencing recommendation. On May 20, 2004, the government filed a sentencing memorandum. On May 25, 2004, Defendant filed a sentencing memorandum. On June 1, 2004, the court gave Defendant credit for time served on a related state conviction, and it sentenced Defendant to 98 months imprisonment. The court also imposed four years supervised release, ordered Defendant to pay a $100 special

---

[1] If a prisoner is in custody pursuant to a sentence imposed by a federal court and such prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the prisoner] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; *see also Daniels v. United States*, 532 U.S. 374, 377, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001).

assessment and dismissed Count 2 of the indictment. Judgment entered against Defendant on the same date that the court sentenced Defendant. Defendant did not file a direct appeal.

On June 6, 2005, Defendant filed the instant motion. Along with his motion, Defendant submitted an affidavit. In his motion, Defendant claims that his counsel provided ineffective assistance during the sentencing phase of his case. Specifically, Defendant alleges:

> My atty abandoned me during my sentencing by (1) w/drawing "[safety-valve]" after requesting it; (2) w/drawing [pre-sentence investigation report] objections that would have lowered my sentencing; (3) abandoning my "time-credit served for state sentence" which was part of federal crime; (4) recommending the "high end" of range.

He also claims that his counsel failed to appeal the sentence that the court imposed. In that regard, Defendant alleges:

> In the presence of my family & friend—after I was sentenced, he said he would not help me appeal. He said the case was over. Later on the phone he said he could not help me appeal because "He was not my lawyer any more."

On July 21, 2005, Defendant filed Angela A. Ricchio's affidavit in support of his motion, and, on August 26, 2005, Defendant filed Michaela A. Graves' affidavit in support of his motion.

On December 13, 2005, the court ordered the government to respond to Defendant's motion. On February 6, 2006, the government filed a response. Although he did not file a reply, Defendant requested an evidentiary hearing. The court appointed counsel and held

an evidentiary hearing on November 7, 2007.[2] Defendant's motion is fully submitted, and the court now turns to consider it.

### III. SUMMARY OF RELEVANT HEARINGS

#### A. *Sentencing Hearing*

The undersigned sentenced Defendant on June 1, 2004. At the sentencing hearing, Defendant acknowledged that he pled guilty and that he faced a sentence that fell between five and forty years. Defendant and the government made a record regarding their sentencing agreement. Specifically, the government noted that the parties agreed that the base offense level was 32.[3] Defendant and the government asserted that a three-level reduction for acceptance of responsibility was warranted. Given an adjusted total offense level of 29 and a criminal history category I, Defendant faced a range of imprisonment of 87 to 108 months. The government noted that, although the applicable guideline range was agreed upon, Defendant agreed to argue for a sentence of 98 months and the government agreed to argue for a sentence of 108 months. Per the sentencing agreement, Defendant

---

[2] Generally, the court need not conduct an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255. *See Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (same); *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986) (stating that a district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). However, an evidentiary hearing is required where a defendant claims that he asked his attorney to file an appeal and his attorney failed to file an appeal. *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002); *Estes v. United States*, 833 F.2d 645, 649 (8th Cir. 1989).

[3] Based on discovery materials viewed in the United States Attorney's Office that indicated Defendant should be held responsible for 3,756 kg. of marijuana equivalent drugs, the pre-sentence investigation report calculated a base offense level of 34.

declined to argue a safety-valve adjustment.[4] Both parties agreed not to seek a departure. The court was told that there were no remaining objections. Defendant agreed with the government's statement of the parties' sentencing agreement.

After the terms of the sentencing agreement were made part of the record, the court questioned Defendant about the sentencing agreement. Defendant told the court that he read the pre-sentence investigation report and that he had the opportunity to raise with his attorney any concerns that he had with the pre-sentence investigation report. Defendant stated that his attorney made all the objections to the pre-sentence investigation report that he requested. Defendant also stated that he was in agreement with his attorney and the government that the court should sentence him within the agreed upon range, that is 87 to 108 months imprisonment. The government clarified that the effective range would be 98 to 108 months based on the parties' sentencing agreement. Defendant explained that, during negotiations with the government, he preserved his right to argue for a sentence of 98 months rather than 108 months because he wanted credit for ten months that he had served on a related discharged state sentence.

The court agreed to sentence Defendant within the range agreed to by the parties, that is, 98 to 108 months. During his colloquy, Defendant gave no indication that he was seeking any sentence except the 98 months urged by his attorney. The court, in imposing a sentence of 98 months, agreed with Defendant's attorney and gave Defendant credit for ten months that he served on his state conviction. The court advised Defendant of his right to file a written appeal within ten days. Thereafter, the court gave Defendant an opportunity to ask questions, and Defendant indicated that he understood everything and that he had no questions.

---

[4] The pre-sentence investigation report did not score Defendant with a two-level downward adjustment for safety-valve because "he has not truthfully provided the government with all the information and evidence concerning his offense." In Defendant's objection to the pre-sentence investigation report, he wrote: "The Defendant notes that he has been truthful with the government."

5

### B. *Evidentiary Hearing*

The November 7, 2007 evidentiary hearing focused on Defendant's claim that he requested his attorney to file an appeal and his attorney refused to file an appeal. During the evidentiary hearing, Zoshua Z. Zeutenhorst represented Defendant, who participated by telephone. Assistant United States Attorney C.J. Williams represented the government.

#### 1. *Testimony of Jonathan B. Hammond*

Jonathan B. Hammond, Defendant's attorney in the instant case, graduated from law school in 1984 and has practiced criminal law in federal court since 1987. He has been a member of the court's CJA panel since 1987, representing indigent defendants. Hammond testified that he has experience representing clients on appeal. Even when it was his opinion that there were no legitimate grounds to appeal, Hammond has filed a notice of appeal when asked to do so by his client. Hammond holds the opinion that it is not his prerogative to refuse to file a notice of appeal. If he thinks his client's filed appeal does not have legal merit, Hammond acknowledged that he can file an application to withdraw as counsel and file an *Anders*[5] brief setting forth any arguable claim his client may have. He has followed this procedure many times before.

In June of 2004, it was Hammond's practice to discuss with his client and explain to his client, prior to sentencing, the likely sentencing and appeal issues, the right to appeal and the necessity of a timely-filed notice of appeal. After sentencing, Hammond often discussed with his client whether he or she wished to file an appeal. Hammond noted that he commonly reflected his understanding of his client's wishes in correspondence generated after the sentencing.

Hammond recalled that Defendant pled guilty to conspiracy to distribute methamphetamine and that the parties were not able to reach a plea agreement because of accusations made by Defendant's co-conspirators as to the drug quantities with which

---

[5] *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L. Ed.2d 493 (1967).

Defendant was involved. When the pre-sentence investigation report was released attributing a higher quantity of controlled substances to Defendant, Hammond filed an objection to the pre-sentence investigation report so that the issue of drug quantity could be addressed at the sentencing hearing. Because there were risks in litigating the drug quantities, the attorneys negotiated a sentencing agreement. Defendant and Hammond discussed the proposed sentencing agreement, and Defendant agreed to it. In Defendant's sentencing memorandum, Hammond informed the court that the parties had entered into a sentencing agreement. The government sought a sentence of 108 months, which was the high end of the applicable guideline range, and Defendant sought a sentence of 98 months, which accounted for time he had served in state custody on a related charge.

Although Hammond did not have a specific recollection of discussing the right to appeal with Defendant immediately after the June 1, 2004 sentencing, Hammond felt certain that he did talk to Defendant. Hammond recalled that Defendant was allowed the privilege of self-surrender so he was available to Hammond after the sentencing to discuss the right to appeal, which the court had just addressed during the sentencing hearing. Further, Hammond's time records reflect that an office conference occurred with Defendant on June 2, 2004. *See* Ex. 2. In addition, on June 3, 2004, Hammond sent Defendant a follow-up letter, which discussed his right to appeal. *See* Ex. 1. The letter, in pertinent part, reads:

> Based on our earlier conversations, I will not be filing a notice of appeal. It is my understanding that since the judge has granted the ninety-eight month sentence which we requested and because the Court has allowed you the privilege of self-surrender, there are no longer any contested issues for the Court of Appeals to review.

*Id*. Hammond had no further communications with Defendant on the issue of filing an appeal. However, Hammond did have communications with Defendant concerning the impact of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and the motion by the government to destroy evidence. Hammond's file also

7

reflected a request from Angela Ricchio for a copy of Defendant's file which was honored the same day the request was received. Hammond did not bill anyone for these additional professional services rendered to Defendant after the sentencing. At no point after sentencing did Defendant or any member of his family raise the alleged failure to file an appeal with Hammond. Hammond first learned of the complaint after the motion at issue was filed. After reviewing the complaint of Defendant and the affidavits in support of the complaint, Hammond adamantly denied that Defendant or a member his family ever asked him to file an appeal. Hammond had no recollection of stating, immediately following the sentencing, that he refused to be Defendant's lawyer any longer, that he washed his hands of it or that he refused to file a notice of appeal. Hammond also denied ever telling Defendant that he was going to receive a sentence of sixty months, that is, the mandatory minimum sentence under the statute of conviction.

## 2. *Testimony of Defendant*

Defendant acknowledged that he was sentenced by the undersigned on June 1, 2004 and that Hammond represented him. During the evidentiary hearing, defense counsel asked Defendant if he received the sentence that he anticipated and Defendant did not directly answer the question. In response to the question, Defendant stated that Hammond did not argue his sentence and he got 98 months. Defendant indicated that he would have gotten 108 months but he was given 10 months credit for the time he spent in state custody on a related charge. Defendant testified that he was upset when he got a sentence of 98 months.

Defendant testified that, after the sentencing, he had a conversation with Hammond outside the courtroom and he told Hammond that he wanted to appeal his sentence. Defendant testified that, in response, Hammond said there was nothing to appeal, said he was no longer his lawyer, said he washed his hands of the case, wished him good luck and told him that he would be out in five. Defendant claims that he then looked at his: wife, Angela Ricchio; daughter, Jessica Ricchio; sister, Cindy Stowe; and friend, Michaela

8

Graves and said he cannot do that. According to Defendant, he called Hammond a week later and, when again asked about filing a notice of appeal, Hammond said there was nothing to appeal, said that he was no longer my lawyer and wished him good luck. On cross examination, Defendant admitted that he met with Hammond alone in Hammond's office the day after the sentencing. Defendant denied that he discussed his appeal at that meeting but did not state why he met with Hammond that day. Defendant admitted that he received a letter from Hammond after the sentencing, but he could not remember what was in the letter. Defendant admitted that, after the sentencing, he never sent a letter to Hammond complaining about Hammond's alleged refusal to file an appeal on his behalf, he never filed a pro se notice of appeal, he did not contact another lawyer about filing a notice of appeal and he never contacted the court to ask if there was some way to file a notice of appeal because Hammond would not file it. Despite maintaining that Hammond refused to be his attorney, Defendant admitted that he contacted Hammond after the sentencing about the *Blakely* case and other matters.

Further, Defendant admitted that he talked to his wife about the instant motion after he arrived at the BOP facility. He denied discussing his motion with Jessica Ricchio, Cindy Stowe and Michaela Graves after his sentencing, but he admitted that he has had communications with them since being imprisoned. He stated that his wife may have contacted Jessica Ricchio, Cindy Stowe and Michaela Graves to ask them to file affidavits, but he did not ask them to file affidavits.

### 3. *Testimony of Angela Ricchio*

Angela Ricchio, Defendant's wife for the last twenty years, testified that she was present for every single meeting Defendant had with his attorney. Angela Ricchio stated that she and Defendant believed Defendant was going to get a sentence of less than 70 months.[6] When Defendant ended up with a sentence of 98 months, Angela Ricchio stated

---

[6] In her affidavit in support of Defendant's motion, Angela Ricchio claimed that
(continued…)

that she and Defendant were upset. According to Angela Ricchio, when they left the courtroom after the court imposed Defendant's sentence, Defendant asked why he got a sentence of 98 months and asked Hammond to file an appeal. Angela testified that Hammond said that he washed his hands of it and that he walked away from them. Angela Ricchio claimed that Jessica Ricchio, Cindy Stowe and Michaela Graves also witnessed this incident. Angela Ricchio stated that Defendant attempted to call Hammond one time and that Defendant was told Hammond was done, Hammond was not going to help him any more and Hammond was not going to file an appeal.

On cross examination, Angela Ricchio stated that she read everything that Defendant received, including the sentencing memorandum, and that she did not recall the visit to Hammond's office the day after the sentencing. She also did not remember the June 3, 2004 letter wherein Hammond addressed the appeal issue. Angela Ricchio stated that she received the affidavit form attached to Defendant's motion from her husband, and she denied sending any affidavit forms to Jessica Ricchio, Cindy Stowe and Michaela Graves. According to Angela Ricchio, Defendant sent the forms to Jessica Ricchio, Cindy Stowe and Michaela Graves, but she talked to the witnesses about their affidavits and the issue of the appeal.[7]

### 4. *Testimony of Michaela Graves*

Michaela Graves, a friend of Defendant's for the past fifteen years, stated that she attended Defendant's sentencing hearing on June 1, 2004 and observed that he was upset. According to Michaela Graves, she was present when Defendant talked to Hammond in

---

[6](…continued)
Hammond told Defendant that "there was a plea bargain for 60 months, which seemed fair, but the day of sentencing it changed to 98 months."

[7] The court notes that Angela Ricchio misspelled Michaela Graves' name in her affidavit and whoever typed or prepared the affidavit signed by Michaela Graves also misspelled Michaela Graves' name.

the hall outside the courtroom after the sentencing. Michaela Graves testified that Defendant asked if he could have an appeal or something and Hammond said that Defendant got what he got, that he should accept what he got and that he wanted nothing more to do with it.

On cross examination, Michaela Graves admitted that she filled out her affidavit in support of the motion after receiving the form from Angela Ricchio.[8] Michaela Graves did not know if Defendant had a meeting with Hammond the day after sentencing or if Hammond subsequently wrote Defendant a letter concerning his appeal.

### 5. *Testimony of Cindy Stowe*

Cindy Stowe, Defendant's sister, testified that she was present for Defendant's sentencing hearing on June 1, 2004. She recalled that the judge explained the amount of time Defendant was facing and Hammond saying that there was an agreement that he should receive ninety-some months. She also recalled a conversation about crediting Defendant for time he had served in state custody. Cindy Stowe recalled that, after the sentencing hearing concluded, she, Michaela Graves, Jessica Ricchio and Defendant met with Hammond in the hallway. According to Cindy Stowe, Angela Ricchio asked Hammond if Defendant had a right to appeal and Hammond said no and that he was done. Cindy Stowe testified that Angela Ricchio kept asking about filing an appeal and Hammond said there was nothing that could be done. When asked if she heard Defendant ask for an appeal, Cindy Stowe testified that she was sure he did.

On cross examination, Cindy Stowe recalled accompanying Angela Ricchio and Defendant to Hammond's office the day after the sentencing hearing. However, she did not participate in the meeting between Hammond and Defendant. She testified that she did

---

[8] In her affidavit filed in support of Defendant's motion, Michaela Graves, in part, states: "[Defendant's] lawyer said he washes his hands from this case. And would not appeal it either. He would have to find another lawyer."

11

not know Defendant was raising the appeal issue until she was contacted by defense counsel.

## IV. LEGAL STANDARDS

### A. Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not

necessarily support a collateral attack on a final judgment." *Id*. (internal quotation marks and citation omitted).

In addition, defendants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise the claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [defendant], something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis in original). If a defendant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant*, 499 U.S. 467, 501, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *see also McNeal*, 249 F.3d at 749 ("[A] defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").[9]

### B. Standards Applicable to Sixth Amendment

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. Furthermore,

---

[9] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998); *Walker v. United States*, 115 F.3d 603, 605 (8th Cir. 1997); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Douglas v. California*, 372 U.S. 353, 356-57, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687; *see also Williams*, 529 U.S. at 390 (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the

"strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id*. at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id*.

Further, the standard is different when the allegation is counsel failed to file a direct appeal.

> A "counsel's failure to file a notice of appeal when so instructed by the client constitutes ineffective assistance of counsel for purposes of [28 U.S.C. §] 2255." [*Estes,* 833 F.2d at 648] (citations omitted). A showing of actual prejudice is not necessary. [*Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000)] citing *Holloway v. United States*, 960 F.2d 1348, 1356-57 (8th Cir. 1992)). Nevertheless, for a [defendant] to succeed, he must show that he made his desire to appeal evident to his attorney. *See Barber*, 204 F.3d at 1182. "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the factfinder finds to be more credible indicates the contrary proposition." *Id*. (citation omitted).

*Yodprasit*, 294 F.3d at 969.

15

## V. ANALYSIS

### A. *Defendant's Claims*

The court, after reviewing the record and the evidence presented at the evidentiary hearing, finds as follows:

1. Defendant knowingly and voluntarily entered into a sentencing agreement with the government. The sentencing agreement, in pertinent part, provided that, in return for the government not pursing a higher base offense level based on drug quantity, Defendant agreed to give up his request for a safety-valve reduction, and both parties agreed that the effective sentencing guideline range should be from 98 to 108 months imprisonment. The Defendant was free to argue for a 98 month sentence and the government was free to argue for a 108 month sentence; both parties made such arguments at the sentencing hearing.

2. Defense counsel did not abandon the argument that Defendant should receive credit against his federal sentence for time served on a state sentence for related criminal conduct. Defense counsel made the argument and the court agreed with Defendant. The court reduced Defendant's federal sentence to 98 months, and it did not impose the 108 months urged by the government. The record, including the judgment, so indicates.

3. Defense counsel did not recommend the "high end" of the applicable guideline range. Rather, he successfully negotiated with the government and, consequently, Defendant faced a sentence that fell between 98 and 108 months imprisonment, not 108 and 135 months imprisonment.

4. Defendant's contention that he was expecting a sentence lower than 98 months at the time of the sentencing hearing is not credible. Defendant admitted to the court that he understood the terms of the sentencing agreement, which included the 98 to 108 month range. The 98 month term of imprisonment imposed by the court is totally consistent with the stipulations made by Defendant at the sentencing hearing.

5. Defendant failed to show that he directed or instructed his attorney to file an appeal after the sentencing hearing. Defendant's contention that he requested an appeal

because he did not receive a 60 month sentence is not credible in light of Defendant's sentencing memorandum, the sentencing agreement and the sentencing hearing. Further, Defendant's contention that he requested an appeal is weakened by the fact that he does not account for the June 2, 2004 meeting or the June 3, 2004 letter. Defendant's contention is also weakened by the fact that he never contacted his attorney regarding his failure to appeal and only raised such claim in his instant motion.

Here, Defendant and Hammond have offered conflicting testimony, that is, Defendant claims that he expressed his desire to appeal and Hammond contends that Defendant never requested an appeal. As previously determined, Hammond's testimony is more credible, especially in light of the record. In contrast, Defendant only offers self-serving testimony, and he does not account for events that occurred after the sentencing hearing. Aside from Defendant's self-serving testimony, there is simply no evidence that Defendant asked Hammond to file an appeal. The testimony of Defendant's witnesses is not believable and is undermined by the record. Concerning Defendant's claim that his attorney failed to file an appeal, the court concludes that Hammond did not provide ineffective assistance. With respect to the remaining claims, the court finds that, in accordance with its prior determinations, counsel did not provide deficient assistance and no prejudice resulted from counsel's actions. *Strickland*, 466 U.S. at 689-95.

Moreover, the court thoroughly reviewed the record and finds that the denial of Defendant's 28 U.S.C. § 2255 motion results in no "miscarriage of justice" and is consistent with the "rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also Apfel*, 97 F.3d at 1076 ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder*, 810 F.2d at 821)). Accordingly, Defendants's 28 U.S.C. § 2255 motion shall be denied.

## B. *Certificate of Appealability*

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a defendant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [defendant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [defendant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right

and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that Defendant failed to make the requisite "substantial showing" with respect to the claims he raised in his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present questions of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, a certificate of appealability shall be denied. If he desires further review of his 28 U.S.C. § 2255 motion, Defendant may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## VI. CONCLUSION

The court finds all of Defendant's assertions to be without merit. Accordingly, Defendant's motion pursuant to 28 U.S.C. § 2255 (docket no. 37) is **DENIED**. In addition, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 7th day of March, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA